UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KERRY MITCHELL**

        **Plaintiff,**        **CIVIL ACTION NO. 05-CV-73037-DT**

        **vs.**        **DISTRICT JUDGE LAWRENCE P. ZATKOFF**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**I.      REPORT AND RECOMMENDATION**

This Court recommends that Plaintiff's Motion for Summary Judgment (Docket # 11) be **GRANTED** and Defendant's Motion for Summary Judgment (Docket # 14) be **DENIED**.

**II.     PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Kerry Mitchell filed an application for Disability Insurance Benefits ("DIB") on July 29, 2002. (Tr. 44-46). He alleged he had been disabled since May 17, 2002. *Id*. Plaintiff's claim was initially denied. (Tr. 22-27). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ) February 6, 2003. (Tr. 30). A hearing took place before ALJ Neil White on December 3, 2004. (Tr. 179-90). Plaintiff was represented by an attorney at the hearing. (Tr. 28-29, 181). The ALJ denied Plaintiff's claim in a written opinion issued on January 24, 2005. (Tr. 16-21). The Appeals Council denied review of

the ALJ's decision on June 22, 2005 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 4-6); 20 C.F.R. § 404.981. Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for summary judgment.

### III. MEDICAL HISTORY

Plaintiff reported back and leg pain in 1998. MRI tests indicated that Plaintiff had mild degenerative disk disease. Plaintiff continued to report problems with his back and legs as well as some dizziness in 1999 and early 2000. Plaintiff's primary physician, Dr. Henryk Pietrus, subsequently referred Plaintiff to Dr. Joel Beltran, a board certified neurologist, for an evaluation. An MRI conducted in July 2000 suggested that Plaintiff had multiple sclerosis ("MS"), a diagnosis that was later confirmed.[1] The record contains Dr. Beltran's treatment notes dated 3/19/01, 8/22/01, 1/2/02, 3/4/02, 6/5/02, 9/9/02 and 12/9/02, which describe Plaintiff's condition and treatment for his MS. These records indicate that Plaintiff's MS was stable. Plaintiff reported symptoms of pain in his extremities, fatigue, headaches, dizziness, urinary incontinence and depression. These

---

[1] Multiple sclerosis is

> a disease in which there are foci of demyelination of various sizes throughout the white matter of the central nervous system, sometimes extending into the gray matter. Typically, the symptoms of lesions of the white matter are weakness, incoordination, paresthesias, speech disturbances, and visual complaints. The course of the disease is usually prolonged, so that the term multiple also refers to remissions and relapses that occur over a period of many years. Four types are recognized, based on the course of the disease: relapsing remitting, secondary progressive, primary progressive, and progressive relapsing. The etiology is unknown.

> *Dorland's Illustrated Medical Dictionary* 1669 (30th ed. 2003).

symptoms were treated with various medications, which were generally effective.[2] Dr. Beltran noted in his reports that Plaintiff was awake, alert, and oriented during his evaluations. He also observed that Plaintiff followed commands appropriately and his gait was intact.

## IV.   HEARING TESTIMONY

Plaintiff testified at the December 3, 2004 administrative hearing. (Tr. 181-89). Plaintiff was fifty years old at the time of the hearing. He had graduated from high school and had completed one year of college. (Tr. 182). He had previously worked as an automobile production worker. (Tr. 51, 76).

Plaintiff testified that he ran the heat treat department at a manufacturing plant and that he stopped work in May 2002. (Tr. 182-183). Plaintiff testified that his department changed from a two-man to one-man department and that he could not keep up with his work requirements due to fatigue. (Tr. 184). Plaintiff further testified that: (1) he did not belong to any clubs or organizations; (2) his wife handled the grocery shopping but he helped her put the groceries away; (3) his sons did the yard work; and (4) he assists with the house work such as washing dishes, laundry and straightening up. (Tr. 185-86). Plaintiff also indicated that most of his prescribed medication is effective but that his injections can cause dizziness and that his medication for fatigue sometimes does not work. (Tr. 186, 188, 189). Plaintiff further testified that he

---

[2]   Dr. Beltran's report dated 3/19/01 indicates that he prescribed the medicines Antivert and Calen for Plaintiff's dizziness but that Plaintiff stopped taking the Calen for unknown reasons. Dr. Beltran's report dated 8/22/01 states that he prescribed Paxil for Plaintiff's reported depression but that Plaintiff "did not tolerate" the medicine. However, Dr. Beltran noted that Plaintiff's depression was improving on its own.

generally has no difficulty sleeping but that he naps for several hours a day. (Tr. 186, 187). Plaintiff also stated that he: (1) can usually stand and walk for about 30 minutes until his lower legs begin to tighten; (2) cannot lift anything over ten pounds because he losses his balance; (3) can climb stairs without much difficulty; and (4) cannot bend over without feeling dizzy. (Tr. 187-88).

Judith Findora, a vocational expert ("VE"), also testified at the administrative hearing. (Tr. 189). Ms. Findora testified that Plaintiff's past work as a production worker involved medium, unskilled labor with a variety of different assignments.[3] (Tr. 189).

## V. THE ALJ'S FINDINGS

The ALJ found that Plaintiff met the disability insured status requirements and had not engaged in substantial gainful activity since March 17, 2002. He further determined that Plaintiff did suffer from MS, which is a severe impairment, but that Plaintiff did not have an impairment that met or equaled the Listing of Impairments. The ALJ additionally found that Plaintiff's suffered some limitations due to his MS but that Plaintiff's allegations regarding his limitations were not fully credible. The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform a wide range of unskilled, medium work activity limited by his ability to only lift/carry up to ten pounds frequently and fifty pounds occasionally with sitting/standing/walking up to six hours during an eight hour work day.

---

[3] The ALJ also stated in his written opinion that the VE testified an individual with Plaintiff's RFC could return to his past relevant work as a production worker as previously performed and as generally performed in the national economy. (Tr. 20). Defendant concedes that such testimony was never elicited from the VE.

The ALJ ultimately concluded that Plaintiff's RFC did not preclude him from performing his past relevant work and that Plaintiff was therefore not disabled.

## VI. STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## VII. LAW AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

> (1) he was not presently engaged in substantial gainful employment; and
>
> (2) he suffered from a severe impairment; and
>
> (3) the impairment met or was medically equal to a "listed impairment;" or
>
> (4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.

The ALJ terminated his analysis at stage four finding that Plaintiff had the RFC to perform a wide range of medium work only limited by his ability to lift up to 10 pounds frequently. The ALJ further found that Plaintiff's RFC did not preclude him from performing his past relevant work and was therefore not disabled. Plaintiff raises the following challenges to the ALJ's RFC finding: (1) the ALJ improperly found that Plaintiff's subjective complaints were less than fully credible; and (2) the ALJ improperly discounted the medical opinions of Plaintiff's treating neurologist and a non-examining medical consultant. Plaintiff further alleges that the ALJ's finding that Plaintiff's RFC did not preclude him from performing his past relevant work was based on insufficient evidence.

### A.     THE SUFFICIENCY OF THE ALJ'S RFC FINDING

#### 1.     The ALJ's Determination Regarding Plaintiff's Credibility

Plaintiff attacks the ALJ's RFC finding by challenging the ALJ's determination that Plaintiff's subjective complaints were less than fully credible.

Plaintiff testified at the hearing about the following symptoms: (1) pain in his legs when standing or walking for more than 30 minutes; (2) fatigue which prevented him from adequately performing his most recent job and which was effectively treated with medication; (3) the need to nap for several hours a day; (4) inability to lift more than 10 pounds due to problems balancing; (5) losing his balance when walking down stairs; and (6) dizziness from bending down.

In his written opinion, the ALJ notes that the "record reveals a history of fatigue, upper/lower extremity pain and weakness since mid 2000." (Tr. 18).  The ALJ later writes that "[a]t the hearing the claimant testified that he continues to experience significant difficulties related to his impairments despite treatment.  The claimant also testified that he continues to experience fatigue and weakness." (Tr. 19).  He also remarks that "as noted above, the undersigned finds the testimony regarding the claimant's subjective complaints as not substantially credible based on the objective medical evidence." (Tr. 19-20).  These comments encompass the entirety of the ALJ's discussion regarding Plaintiff's subjective complaints, with the exception of Plaintiff's claimed mental impairments which is not at issue on appeal.

Social Security Ruling (SSR) 96-7p states that it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that

the allegations are or are not credible. *Id*, 1996 WL 362209, at 34484. The ALJ's decision must be based on specific reasons for the findings of credibility. *Id.* These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security*, 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994).

C.F.R. § 404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment received for relief of symptoms, and additional considerations relevant to functional limitations. 20 C.F.R. § 404.1529(c)(3).   Moreover, 20 C.F.R. § 404.1529 sets forth criteria for evaluating subjective symptoms, including pain. The factors to be considered under this section include consideration of objective medical evidence, although that particular factor is not, by itself, determinative.  20 C.F.R. § 404.1529(c)(2) ("[h]owever, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

Likewise in *Duncan v. Secretary of HHS*, 801 F.2d 847, 853 (6th Cir. 1986), the Sixth Circuit required "objective medical evidence of an underlying medical condition," but did "not require ... 'objective evidence of the pain itself.' " *Id. (quoting Green v. Schweiker,* 749 F.2d 1066, 1071 (3d Cir. 1984).

The courts generally cede enormous latitude and deference to the ALJ's credibility determinations.  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Richardson v. Perales*, 402 U .S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

A review of the ALJ's written opinion does not support the assertion that the ALJ discussed and properly analyzed Plaintiff's subjective complaints of fatigue, weakness and other "limitations'" which presumably includes Plaintiff's complaints of pain, dizziness and loss of balance. In fact, the record demonstrates that the ALJ failed to provide any explanation in support of his credibility determination except for a conclusory statement regarding the lack of objective medical evidence. The Court could search the record for evidence in the administrative record supporting such a ruling if it were made. *See Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531-32 (6th Cir.1997) (holding that "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence"). However, searching the record to support a non-existent finding is not the function of the Court on review. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion.") The ALJ's failure to explain his decision is therefore not supported by substantial evidence.

### 2. Whether the ALJ Erred in Failing to Consider the Opinions of Plaintiff's Treating Neurologist and the State Agency Physician

Plaintiff contends that the ALJ committed reversible error when he failed to evaluate or discuss the opinion of his neurologist, Dr. Beltran, regarding his inability to work and the opinion of a State Agency physician that Plaintiff's impairments limited him to light work.

#### a. The Opinion of Dr. Beltran

On June 5, 2002 Dr. Beltran noted that Plaintiff "apparently ... has been unable to work on the assembly line because of continued fatigue" and that he "still feels dizzy." Dr.

Beltran thereafter continued Plaintiff on his medication for paresthesias[4] and dizziness and prescribed medication for Plaintiff's fatigue. He also "recommend[ed] vocational rehab to see if [Plaintiff] is able to find another line of work. However, if this is not possible, [Plaintiff] may need to be on disability on a permanent basis." (Tr. 121).

The Commissioner of Social Security generally gives "more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2). The Commissioner will give the opinion of a treating physician controlling weight, if the opinion is well-supported and not inconsistent with the other substantial evidence. *Id.* When the opinion of the treating physician is not given controlling weight, factors such as the length of the treatment relationship, nature and extent of the treatment relationship, and the supportability of the physician's opinion will be considered in determining how much weight to afford the opinion. *Id.* The regulations also require the ALJ to give "good reasons in our notice of determination or decision for the weight ... give[n] your treating source's opinion." 20 C.F.R. § 404.1527(d)(2); see also SSR 96- 5p.

The Sixth Circuit has held that reversal is required when the agency fails to follow the treating source regulations and does not "give good reasons" for not giving weight to a treating physician's opinion in the context of a disability determination. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). However, the *Wilson*

---

[4] A paresthesia is "an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus." *Dorland's Illustrated Medical Dictionary, supra* note 2, at 1371.

Court left open the possibility that a *de minimis* violation could constitute a harmless error, including "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id.* at 547.

The ALJ does not discuss Dr. Beltran's statements in his written opinion.[5] However, this omission by itself only constitutes a *de minimis* violation of the regulations and is therefore harmless. None of Dr. Beltran's reports provide an assessment regarding any physical limitations resulting from Plaintiff's medical condition. Furthermore, Dr. Beltran did not opine that Plaintiff's inability to work on the assembly line was, in fact, due to his fatigue. The doctor's use of the term "apparently" supports this conclusion. Rather, the doctor's statement is best characterized as a summarization of Plaintiff's own report and the doctor's subsequent recommendation for vocational rehabilitation and *possible* permanent disability is solely based upon that report. Thus, these statements are not an "opinion to which the ALJ was required to give any particular weight, and the failure to specifically address [Dr. Beltran's] report in his written opinion was harmless error." *Daniels v. Commissioner of Social Security*, 152 Fed.Appx. 485, 490 (6th Cir. 2005) (unpublished).

### b. Opinion of the State Agency Physician

Plaintiff also argues that the ALJ erred in ignoring a medical consultant's RFC report. The RFC is not a medical assessment, but rather an administrative one. See SSR 96-8p,

---

[5] The parties do not specifically address whether Dr. Beltran would qualify as a treating physician. The regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimaint. 20 C.F.R. § 404.1502. Dr. Beltran was Plaintiff's treating neurologist and had an ongoing treatment relationship with Plaintiff. He would therefore qualify as a treating physician under the regulations.

1996 WL 374184, at *2; 20 C.F.R. §§ 404.1545(a) and 404.1546. The findings made by program physicians and psychologists regarding an individual's impairments, including RFC, are treated as expert opinion evidence of nonexamining sources. See SSR 96-6p, 1996 WL 374180, at *1. The "rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider [the consultant's findings of fact] about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists." *Id. at \*2.* Furthermore, an ALJ "must explain the weight given to the [consultant's] opinions in their decisions. *Id.*

An RFC Assessment form provided by a non-examining medical consultant was submitted as evidence to the ALJ. (Tr. 129-37). Based upon a review of Plaintiff's medical records, the consultant concluded that Plaintiff can only lift 10 pounds frequently and 20 pounds occasionally, which is the equivalent of light work under 20 C.F.R. § 404.1567(b). (Tr. 130-31). The consultant also concluded that Plaintiff's documented dizziness and fatigue resulted in postural and environmental limitations, meaning that Plaintiff should avoid climbing ladders/ropes/scaffolds, performing balance-related activities and hazards such as concentrated exposure to machinery, heights, etc. (Tr. 131, 133).

The consultant's report is never discussed in the ALJ's written opinion and there is no indication that it was even considered by him. The ALJ's RFC assessment that Plaintiff could perform a wide range of medium work limited only by his ability to frequently lift/carry up to 10 pounds conflicts with the additional exertional, postural and environmental limitations found to exist by the medical consultant. As a result, the ALJ committed reversible error by failing to explain his decision and why he did not adopt the consultant's

opinion. Such an error is especially significant given that the consultant's RFC assessment was the only one submitted by an outside source and if, adopted, could have precluded a finding that Plaintiff could perform his past, relevant work.

### B. The RFC and Plaintiff's Ability to Perform His Past Relevant Work

Plaintiff further argues that even assuming the ALJ's RFC is well-founded, substantial evidence does not support the ALJ's finding that Plaintiff could perform his past relevant work. Because this Court concludes that substantial evidence does not support the ALJ's RFC finding, it is unnecessary to address this remaining issue.

### VIII. CONCLUSION

Based on the foregoing discussion, the undersigned recommends that Plaintiff's Motion for Summary Judgment be **GRANTED** (Docket # 11) and Defendant's Motion for Summary Judgment be **DENIED** (Docket # 14).

The Court also recommends that this case be **REMANDED** for further administrative proceedings so that the ALJ may properly address Plaintiff's credibility, the medical consultant's RFC assessment and, if necessary, re-evaluate Plaintiff's RFC and conduct a new step four and five analysis.[6]

---

[6] "[S]entence four of § 405(g) contemplates the type of remand involved in the present case-a remand after a final decision by the district court reversing the denial of benefits by the Secretary in order to correct an error by the Secretary in applying the regulations even if the rehearing to correct the error requires the taking of additional evidence. *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990) (sentence four provides appropriate relief when evidence on record is insufficient to support the Secretary's conclusions and further factfinding is necessary)." *Faucher v. Sec. of Health and Human Services*, 17 F.3d 171, 174 (6th Cir.1994)

## IX. NOTICE TO PARTIES

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 27, 2006        s/ Mona K. Majzoub
                            **MONA K. MAJZOUB**
                            **UNITED STATES MAGISTRATE JUDGE**

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: July 27, 2006                        s/ Lisa C. Bartlett
                                            Courtroom Deputy